IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 12, 2014

## JAMES OSCAR MASON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Bedford County**
**No. 17565      Lee Russell, Judge**

**No. M2013-01998-CCA-R3-PC - Filed September 26, 2014**

The petitioner, James Oscar Mason, appeals the denial of post-conviction relief from his 2012 Bedford County Circuit Court jury conviction of delivery of a Schedule II controlled substance, for which he received a sentence of 10 years' incarceration. In this appeal, the petitioner contends that he was denied the effective assistance of counsel. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

James Ronald Tucker, Jr. (on appeal); and Forest A. Durard, Jr. (at hearing), Shelbyville, Tennessee, for the appellant, James Oscar Mason.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Robert Carter, District Attorney General; and Richard A. Cawley, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On March 29, 2012, a Bedford County Circuit Court jury acquitted the petitioner of one count of the sale of a Schedule II controlled substance but convicted the petitioner of one count of the delivery of the same. The post-conviction court summarized the facts of the case as follows:

> At trial it was proved that the 17[th] [Judicial] Drug Task
> Force provided a CI with $100.00. The CI contacted a David
> Bell about obtaining crack cocaine. Bell contacted [the

petitioner] and his sister, who then drove up to Bell's residence in a white Impala registered to and driven by the [petitioner]. Crack cocaine was obtained from the passenger in the vehicle, the [petitioner's] sister. Subsequently the CI emerged from Bell's house with a plastic baggie containing the cocaine that had been obtained from the [petitioner and his sister]. After the white Impala was stopped, Shirley Mason confessed to Agent Shane George of the 17th Judicial Drug Task Force that she and her brother sold $100.00 worth of cocaine to Bell on the occasion when the [petitioner and his sister] were videoed at the Bell residence and that on the same occasion they sold $30.00 worth of crack cocaine to an Alonzo [sic] Snipes. [The petitioner] made no statement.

At the petitioner's sentencing hearing, the State put on proof, and, according to the post-conviction court's memorandum opinion, the petitioner "commenced what purported to be an allocution but which in fact was a denunciation of [trial counsel]." After receiving advice on his options, the petitioner stated that he wished to proceed directly to post-conviction relief as opposed to a direct appeal. The trial court permitted the petitioner's trial counsel to withdraw, and the court appointed new counsel to represent the petitioner. The petitioner's sentencing hearing was postponed until June 15, 2012, at which time the trial court sentenced the petitioner as a multiple offender to 10 years' incarceration. At the July 20, 2012 hearing on the petitioner's motion for new trial, the petitioner "was examined in open court, waived his appeal, and signed a Waiver of Appeal form."

Because the petitioner had filed a complaint with the Board of Professional Responsibility against his new attorney, the trial court permitted that attorney to withdraw from the case and appointed counsel to represent the petitioner in his pursuit of post-conviction relief. At an October 4, 2012 hearing, post-conviction counsel informed the court that the petitioner "was expressing dissatisfaction with [his] services," but upon questioning at the hearing, the petitioner "insisted that he was fully satisfied with post-conviction counsel's representation of him." Although represented by post-conviction counsel, the petitioner filed a pro se petition for post-conviction relief on November 26, 2012, and the post-conviction court entered a preliminary order on December 20 appointing post-conviction counsel as the petitioner's post-conviction counsel. The petitioner filed an amended petition for post-conviction relief in February 2013 and a second amended post-conviction petition on March 28, 2013, alleging numerous instances of ineffective assistance of counsel.

At the evidentiary hearing, Alfonzo Snipes testified that he had lived in Bedford County for approximately 25 years and that he knew both the petitioner and the

petitioner's sister, Shirley Mason. Mr. Snipes invoked his Fifth Amendment privilege against self-incrimination in response to questioning about whether he witnessed a drug transaction involving the petitioner and Ms. Mason on May 4, 2011. Mr. Snipes did state that, on May 4, 2011, he resided at 1782 Unionville Deason Road, but he could not recall whether he had been charged with any drug-related crime arising out of the events of May 4, 2011, and he denied that the petitioner sold anything to him on that date.

The petitioner testified that, after his case was sent to the grand jury following a preliminary hearing in general sessions court, he hired trial counsel to represent him in early December 2011. Between the time the petitioner hired trial counsel and the petitioner's trial on March 29, 2012, the petitioner met with trial counsel during approximately four court appearances and once at trial counsel's office on the afternoon before the trial. Through his testimony, the petitioner introduced into evidence records of telephone calls placed from his cellular telephone, which showed the petitioner had placed 34 calls to trial counsel between December 1, 2011 and March 19, 2012. The petitioner denied ever receiving a telephone call from trial counsel.

The petitioner stated that trial counsel did inquire whether the petitioner wanted him to subpoena any witnesses. The petitioner gave trial counsel the names of Mr. Snipes, Ms. Mason, and Mr. Greene, the petitioner's counsel at the general sessions court level, but none of these witnesses testified on the petitioner's behalf at trial. The petitioner informed trial counsel that, had Ms. Mason testified at trial, she would have stated that "the drug sale that they claiming that happened didn't ever even happen." The petitioner also testified that he expressed to trial counsel his wish that his case be consolidated with Ms. Mason's so "the truth would have been brought out that I knew nothing about no drugs or had, I got no money from the drugs, there was not even a drug sale."

The petitioner testified that trial counsel never provided him with a copy of his discovery materials, despite his repeated requests, and that he had never seen discovery materials until they were provided to him by post-conviction counsel. The petitioner stated that he decided to take his case to trial because he was unaware of the evidence against him and that, had he been provided with the discovery materials, he "probably could have made a very good, intelligent decision" about his course of action. The petitioner testified that trial counsel never discussed trial strategy or plea negotiations with him. The petitioner admitted that he had rejected a plea offer that included service of six months' incarceration when his case was in general sessions court because the petitioner believed the State "had no evidence against" him.

The petitioner stated that, on the day before his trial, he met with trial counsel at his office where they viewed the video recording of the drug transaction and discussed the

facts of the case. The petitioner testified that he requested a copy of the discovery materials at that meeting but that trial counsel responded that the discovery materials were the same as in Ms. Mason's case, and he provided the petitioner nothing. The petitioner strenuously denied that the meeting occurred on March 22, 2012, or one week prior to his trial, insisting that the meeting took place on March 28.

After the trial but prior to the sentencing hearing, the petitioner received a letter from trial counsel in which counsel opined that the petitioner should receive no more than a six-year sentence because the State had failed to file its notice of enhanced punishment, filed March 23, 2012, at least 10 days prior to the petitioner's March 29, 2012 trial. The petitioner did not recall whether trial counsel had sought a continuance based upon the State's late-filed notice. The petitioner did begrudgingly admit, however, that the sentencing hearing transcript reflected that trial counsel had argued the State's failure to timely file the enhancement notice.

The petitioner acknowledged that, on August 29, 2011, he attended a property forfeiture hearing at which the State presented evidence against him, and he admitted that Agent Shane George testified at the hearing that the petitioner had been involved in a $130 drug transaction. The petitioner also confirmed that he participated in a preliminary hearing in this case, but he insisted that an officer other than Agent George testified at the hearing.

The petitioner admitted that he waived his right to a direct appeal because most of his complaints "went against [trial counsel] and the way he handled the trial." The petitioner conceded that his attorney in his sentencing hearing advised him that the late-filed notice of enhancement could be an appealable issue.

Shirley Mason testified that the petitioner is her brother, and she conceded that she had known Mr. Snipes for over 20 years. Ms. Mason stated that, on May 4, 2011, Mr. Snipes visited her "in the car," which was parked in the driveway of David Bell's residence. Ms. Mason denied that the petitioner was involved in a drug transaction on that date. Ms. Mason further denied telling officers "that she sold $30 worth of crack to [Mr.] Snipes and $100 worth of crack to [Mr.] Bell" or that "she received the crack cocaine from [the petitioner] and gave the money from the sales to him." Ms. Mason explained that she and the petitioner had driven to Mr. Bell's residence on May 4 to invite people to their mother's birthday celebration. Approximately five minutes after arriving at Mr. Bell's residence, and after visiting with both Mr. Snipes and Mr. Bell from their vehicle, Ms. Mason and the petitioner drove away, and they were stopped by law enforcement officers a short time later.

Ms. Mason recalled accompanying the petitioner to trial counsel's office "[m]aybe twice" between December 1, 2011 and March 29, 2012. At one of the meetings,

-4-

Ms. Mason and her attorney, Ms. Napier, were present, and Ms. Mason recalled that the petitioner requested that trial counsel call Mr. Snipes as a witness at trial. Ms. Mason also recalled that the petitioner asked trial counsel to provide him with a copy of his discovery materials, and trial counsel responded that he had mailed a copy of the discovery to the petitioner's address.

Agent Shane George with the Shelbyville Police Department testified that he had served as a special agent on the drug task force for the past 14 years. Agent George testified that, on May 4, 2011, he stopped the petitioner and Ms. Mason in their vehicle shortly after they were observed at the Bell residence selling drugs to Mr. Snipes and Mr. Bell. Agent George explained that a confidential informant ("CI") had been provided with a marked, one-hundred-dollar bill, and that, after the CI informed his superior that he had purchased crack cocaine as requested, Agent George proceeded to stop the petitioner and Ms. Mason. Following the petitioner's arrest, officers collected from him a one-hundred-dollar bill with a serial number which matched that of the bill provided to the CI.

Agent George testified that Ms. Mason made a statement after her arrest that the petitioner "was the source of the crack cocaine for the two transactions that she conducted at the" Bell residence; "that she had met with Mr. Bell and Mr. Snipes"; and that "she did a thirty-dollar crack buy from one and a hundred-dollar crack buy."

Agent George acknowledged that he had testified at the petitioner's property forfeiture hearing, his preliminary hearing, and his trial and that he had testified consistently at all three proceedings. Although Agent George was unsure whether the petitioner was present at the forfeiture hearing, he was certain the petitioner attended both the preliminary hearing and the trial.

Attorney Alicia Napier testified for the State and stated that she had been appointed to represent Ms. Mason at her bond hearing. Ms. Napier recalled that Officer Brian Crews with the Shelbyville Police Department and Agent George were the only witnesses to testify at the preliminary hearing for the petitioner. On March 22, Ms. Napier met with Ms. Mason and the petitioner at trial counsel's office. During that visit, Ms. Napier and trial counsel "went over all of the discovery" with Ms. Mason and the petitioner. Ms. Napier recalled that trial counsel learned he had mailed the petitioner's discovery "to the wrong address," so "copies were made and provided at that point." Ms. Napier confirmed that she personally witnessed trial counsel provide the petitioner with his discovery materials. Ms. Napier testified that the meeting began at 1:00 p.m. and that the Masons did not leave until 6:00 p.m. During the course of that meeting, trial counsel and Ms. Napier reviewed with the Masons both the video and audio recordings of the drug transaction; the photograph of the marked money; the petitioner's criminal history; the names of potential witnesses; the

forensic chemistry report; and the late-filed notice of enhancement.

Emeterio Ramos "Terry" Hernando testified that the trial court appointed him to represent the petitioner at sentencing following the withdrawal of trial counsel. Mr. Hernando stated that he explained to the petitioner his right to a direct appeal "many times," but the petitioner was only interested in pursuing an action against trial counsel. Mr. Hernando counseled the petitioner that the State's late-filed notice of enhancement "was his biggest gun" for a direct appeal and that he had "a good chance of winning an appeal," but the petitioner told him that he was "just interested in post-conviction." Mr. Hernando had filed a motion for new trial on behalf of the petitioner, but on the date of the motion hearing, the petitioner asked Mr. Hernando to withdraw the motion, and the trial court conducted a voir dire of the petitioner about his decision to waive his right to a direct appeal. Subsequently, Mr. Hernando was appointed to represent the petitioner in his post-conviction action, and he drafted a petition for post-conviction relief, which he provided to the petitioner for his review. Two days later, Mr. Hernando received a letter from the Board of Professional Responsibility informing him that the petitioner had filed a complaint against him. Mr. Hernando then moved to withdraw as the petitioner's counsel, and Mr. Durard was appointed in his stead.

In the post-conviction court's extensive memorandum opinion accompanying its order denying post-conviction relief, the court found the petitioner "was not deprived of any constitutional rights" and that trial counsel's representation "met an objective standard of reasonableness and was within the range of competence demanded of attorneys in criminal cases." With respect to the petitioner's claim that trial counsel failed to subpoena Mr. Snipes to testify at trial, the post-conviction court noted that Mr. Snipes invoked his Fifth Amendment privilege against self-incrimination in response to almost all questions asked of him. Stated the court, "It is difficult to imagine [what] Mr. Snipes would have done differently at trial or that his testimony would have made any difference at trial, particularly in view of the very persuasive testimony at trial of a fellow purchaser of crack cocaine on the occasion of the crimes alleged against [the petitioner]." On the petitioner's issue of trial counsel's failure to provide him with discovery materials, the post-conviction court found "[t]he evidence against [the petitioner's] claim on this issue [to be] simply overwhelming." The court continued as follows:

> [Trial counsel] mailed the written discovery to the [petitioner]
> at what [the petitioner] admitted was his correct mailing address.
> Then [the petitioner] was made aware of the State's case at least
> three times, two of them long before trial and long before the
> disposition date on which [the petitioner] set his case for trial.
> [The petitioner] demanded and received, before his case ever

arrived in Circuit Court, an administrative hearing in Pulaski on the seizure of certain property at the time of his arrest, and he also had a preliminary hearing in the General Sessions Court at which, by his own admission, at least two officers testified about the surveillance of the crack house at which [the petitioner] was arrested and about the tape of the transaction. [The petitioner] knew his version of the event and his sister's version, and he knew who was there at the scene because he himself was there. Then, at the lengthy trial preparation meeting, according to Ms. Napier, [the petitioner] was already familiar with the State's discovery responses and then watched the video of the crack sale two additional times. This totally discredits the [p]etitioner's testimony that he received his discovery for the first time post-trial, from Mr. Durard.

In addition, there was no credible evidence that the [petitioner] would have settled his case even if he had received discovery earlier than he claimed he did. Whenever he was in court and whenever he discussed his case, [the petitioner] insisted he was not guilty and insisted that he wanted a jury trial. By his own admission at the evidentiary hearing on the [post-conviction petition], [the petitioner] had turned down at the General Sessions Court level an offer of a six month sentence.

The post-conviction court also was unconvinced by the petitioner's claims that trial counsel failed to sufficiently prepare for trial:

The [p]etitioner's testimony about the length (one hour) and date of the meeting at [trial counsel's] office was not credible. The description given by Ms. Napier of the lengthy and thorough meeting among the attorneys and clients was entirely credible. Ms. Napier recalled the meeting in great detail, and she had no motive to misrepresent the facts at the evidentiary hearing because no [post-conviction action] has been filed against her. Just as importantly, the [p]etitioner has not proven how more meetings or longer meetings with his attorney would have produced a different result at trial. The taped drug transaction, the marked money, and the indisputable fact that [the petitioner] was one of the men in the tape provided overwhelming evidence of the [petitioner's] guilt[].

In this appeal, the petitioner reiterates his claims of ineffective assistance of counsel, claiming that trial counsel performed deficiently by failing to call Mr. Snipes as a witness at trial, by failing to provide discovery materials, and by failing to engage in regular consultation. The State contends that the post-conviction court did not err by denying relief.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2006). A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

To establish entitlement to relief via a claim of ineffective assistance of counsel, the defendant must affirmatively establish first that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and second that his counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Should the defendant fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goud v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When reviewing a claim of ineffective assistance of counsel, we will not grant the defendant the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Claims of ineffective assistance of counsel are mixed questions of law and fact.

*Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the trial court's factual findings, our review is de novo, and the trial court's conclusions of law are given no presumption of correctness. *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

In our view, the record fully supports the ruling of the post-conviction court. With respect to the petitioner's claim that trial counsel should have called Mr. Snipes as a witness, Mr. Snipes's testimony at the post-conviction hearing, which consisted primarily of his invocation of his Fifth Amendment privilege, did nothing to further the petitioner's argument that Mr. Snipes's testimony at trial would have altered the outcome of the petitioner's case. *See Strickland*, 466 U.S. at 694. Ms. Napier's testimony, which was accredited by the post-conviction court, and the petitioner's presence and participation in the forfeiture proceeding and the preliminary hearing all belie the petitioner's claim that he was unaware of the strength of the case against him. Moreover, Ms. Napier testified that, when trial counsel learned that the discovery materials he had mailed to the petitioner had not been received by him, trial counsel made copies of the discovery materials, and Ms. Napier personally witnessed trial counsel provide those copies to the petitioner. Finally, we are unpersuaded, as was the post-conviction court, by the petitioner's argument that trial counsel failed to engage in regular consultation with him. The petitioner has failed to demonstrate that further meetings with trial counsel would have changed the outcome of his case, given the overwhelming amount of evidence against him.

The petitioner has failed to prove by clear and convincing evidence that trial counsel's representation was deficient or prejudicial. Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE